IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY CLAYTON KAVANAUGH, | § | |
| (former TDCJ-CID #1561835) | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-09-2882 |
| | § | |
| MILTON BOYD, *et al.,* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Anthony Clayton Kavanaugh, a former inmate of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), filed this civil rights lawsuit in September 2009, alleging that prison officials used excessive force and failed to protect his safety.  Proceeding *pro se* and *in forma pauperis*, Kavanaugh sued the following TDCJ-CID  employees at the Estelle Unit: Milton Boyd, a correctional officer III; Glenn Jones, a sergeant; and Alfonso Castillo, a warden II. Boyd, Jones, and Castillo have moved for summary judgment, (Docket Entry No. 28).

On December 28, 2009, Kavanaugh advised this court that he had been released from custody on December 18, 2009.  (Docket Entry No. 13).  The certificate of service attached to the defendants' motion for summary judgment shows that a copy of the motion for summary judgment was sent to Kavanaugh at the address he provided.  Kavanaugh has not responded to the motion.

Based on a review of the pleadings, the motion, the summary judgment record, and the applicable law, this court grants the defendants' motion for summary judgment.  Final judgment is entered by separate order.  The reasons for these rulings are stated below.

I.        **The Allegations in the Complaint**

On May 25, 2009,[1] Kavanaugh was assigned to the lockdown transit wing of the Estelle Unit,

cell A-2-112.  He was walking to his cell from the shower with his hands in restraints behind his

back when he dropped his hair brush in front of his cell.  He alleges that the escorting officer, John

Ellis, refused his request for help picking up the brush.  Kavanaugh sat on the floor to try to retrieve

the brush himself.  Officer Boyd, the picket officer, walked toward Kavanaugh and Officer Ellis.

Boyd said that he would get the brush and told Kavanaugh to stand up and go into his cell.

Kavanaugh did not obey.  Instead, he stated that he almost had the brush.  Officer Boyd repeated that

he would pick up the brush and ordered Kavanaugh to stand and go into his cell.  Kavanaugh alleges

that he had difficulty standing up because his hands were cuffed behind his back and he had had hip-

replacement surgery two years earlier.  Kavanaugh alleges that as he tried to get up, Officer Boyd

struck him in the face with his fist, then grabbed Kavanaugh's left shoulder and pushed him into the

cell and onto the bed, causing his forehead to strike the wall.  Officer Boyd then allegedly pressed

down on Kavanaugh's neck with his knee.  Officer Boyd told Kavanaugh that he would remove the

handcuffs, but warned Kavanaugh not to "try anything."  Kavanaugh became upset and began crying.

Officer Boyd told Kavanaugh to stand up and pulled his arms through the food slot in the cell door.

Officer Boyd threatened to use mace if Kavanaugh tried to obstruct the food slot.  Officer Boyd then

removed the handcuffs and left.

---

[1]  In his Step 1 grievance, Kavanaugh indicates that the use of force took place on May 25, 2009. (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, p. 8).  In his more definite statement, Kavanaugh indicates that the incident took place on May 22, 2009.  (Docket Entry No. 11, Plaintiff's More Definite Statement, p. 1).

A few minutes later, Kavanaugh asked Officer Boyd to call a nurse to examine the knot on his head. When Officer Boyd refused, Kavanaugh threatened to set his cell on fire. In an effort to force ranking officers to come to his cell, Kavanaugh flooded the hallway outside his cell. Sergeant Jones came to Kavanaugh's cell to ask why he had flooded the area. Kavanaugh gave his account of Officer Boyd's use of force. Officer Boyd then called Kavanaugh a "nigger" and threatened to file a disciplinary case if he reported the incident. Kavanaugh later asked Officer Boyd about this incident, and Officer Boyd responded that he was having a bad day. Kavanaugh wrote to Warden Castillo complaining that his life was in danger, but Warden Castillo did nothing.

As a result of the use of force, Kavanaugh sustained a knot on his head and had pain in his shoulder and hip. Kavanaugh states that he still has migraine headaches. Kavanaugh seeks $4,200,000.00 in compensatory damages.

## II. The Motion for Summary Judgment

### A. The Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the

nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**B.      The Summary Judgment Evidence**

The defendants provide as summary judgment evidence portions of Kavanaugh's grievance records from the Estelle Unit and of his medical records from May 9 to June 25, 2009.

This court has reviewed the medical records and provides the following summary:

(1)      May 9, 2009:

> Kavanaugh intentionally took an overdose of acetaminophen. He reported that he took the overdose to get better housing. He was transferred to the emergency room.

(2)     May 10, 2009:

Kavanaugh was returned from Huntsville Memorial Hospital after an overdose. He was ambulatory. The pulmonary artery catheter or insertion site on his chest wall appeared infected. The port was installed on May 5, 2009. He was referred for psychiatric evaluation and prescribed Tylenol for three days.

(3)     May 13, 2009:

Chest x-ray following complaints of wheezing. Kavanaugh suffers from sickle cell anemia; "no acute findings."

(4)     May 18, 2009:

Complaint of pain in left shoulder and knee joints and that Tylenol was not helping relieve the pain. Tylenol was discontinued and Meloxicam was prescribed.

(5)     May 21, 2009:

Presegregation evaluation; no acute distress and no symptoms of sickle cell anemia crisis.

(6)     May 27, 2009:

Evaluation of x-ray taken on May 14, 2009 of three views of left shoulder. Mild degenerative changes in acromioclavicular joint and no other bony abnormalities observed.

(7)     June 3, 2009:

Kavanaugh missed a scheduled appointment because no escort was available. He had complained of pain due to sickle cell anemia. He also complained of pain in shoulders, hip, and kidneys. He was scheduled for appointment for the following morning.

(8)     June 4, 2009:

Kavanaugh complained of pain in left shoulder and left hip. He asked to be moved to state jail with air conditioning or be provided with a fan. Review of X-ray showed mild degenerative changes in shoulder, full range of motion in left hip without pain, joint pain associated with sickle cell anemia. He was prescribed Naprosyn.

(9)     June 5, 2009:

Mental health evaluation; complained of lack of treatment for sickle cell anemia; no acute distress; slightly agitated.

(10)    June 8, 2009:

Kavanaugh complained of chest pain.  Continue to monitor for chest pains.

(11)    June 12, 2009:

Kavanaugh deliberately took overdose of 12 tablets of Naproxen. He reported taking the overdose so he would be seen.  He complained of heat in the wing and of pain related to sickle cell anemia.  He denied being suicidal.  He has history of self-injurious behavior in past 12 months, but no urgent mental health needs were identified.  He appeared relaxed.  He was prescribed charcoal orally; Naproxen removed from medication list; referred for psychiatric evaluation.

(12)    June 25, 2009:

Kavanaugh had been transferred from Travis State Jail for treatment of sickle cell anemia.  He had numerous encounters with officers because he was increasingly frustrated with placement in transient status and lack of treatment.  The practice manager was advised of Kavanaugh's refusal of services and request to return to Travis State Jail.  No mental health intervention was indicated.

(Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. B, pp. 1-24).

The court has also reviewed the grievance records and provides the following summary:

(1)     Kavanaugh filed a Step 1 Grievance, 2009159122, on May 27, 2009. He complained that on May 23, 2009, Officer Jones became irritated with Kavanaugh's singing and property hanging on the cell bars and threw it on the floor. Kavanaugh became upset and tried to throw his shower shoe at Officer Jones, who walked away from the cell. The grievance was returned on May 27, 2009 because Kavanaugh had exceeded the limit of one grievance per seven days. (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, p. 5).

(2)     Kavanaugh filed a Step 1 Grievance, 2009167428, on June 9, 2009.  He again complained of the May 23, 2009 incident involving Officer Jones. The grievance was returned on June 9, 2009 because the grievable time period had expired. (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, p. 3).

(3)     Kavanaugh filed a Step 1 Grievance, 2009159073, on May 27, 2009.  Kavanaugh reported that at 2:15 p.m., he was escorted to the shower, where he remained for eight minutes.  When he returned to his cell, he dropped his hair brush.  The escorting officer refused to pick it up.  Kavanaugh got on the floor in an effort to pick up the hair brush.  Officer Boyd came from the picket, spoke to Officer Ellis, and told Kavanaugh to enter his cell.  Kavanaugh said that he was already on the floor and almost had the hair brush, but he was unable to pick it up, so he got to his feet.  Kavanaugh was going into his cell when Officer Boyd struck him on the face.  Officer Boyd then pushed Kavanaugh into the wall of the cell, and threw him onto the bed.  Kavanaugh's head hit the wall.  Kavanaugh's knees were on the floor and his face was pressed into the bed when Officer Boyd pressed his knee against Kavanaugh's neck.  Officer Boyd said that he would remove the handcuffs but if Kavanaugh tried anything, he would beat Kavanaugh's "ass."  Officer Boyd then told Kavanaugh to stand up.  He placed Kavanaugh's hands through the food-slot door.  Officer Boyd locked the door and warned Kavanaugh not to pull away or he would be maced.  Officer Boyd then ordered Officer Ellis to get his mace ready to spray Kavanaugh.

On July 7, 2009, Assistant Warden Gunnels responded that an investigation found no evidence to support the allegations, and a copy would be sent to the Office of the Inspector General for review.  (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, p. 9).

(4)     On July 10, 2009, Kavanaugh filed a Step 2 Grievance in which he identified Officer Ingram as an officer who witnessed the events.  Kavanaugh stated that Officer Ingram had provided a written statement.  He asked prison officials to speak to Officer Ingram about the statement.  Kavanaugh also stated that he asked Officer Boyd why he had lied in response to Kavanaugh's grievance.  Officer Boyd said that he was having a bad day, and that everyone lies.

On July 31, 2009, Linda Richey responded that the Officer of the Inspector General had reviewed Kavanaugh's grievance and concluded that there was insufficient evidence to warrant an investigation.

(5)     As part of the grievance investigation, Officer Rita Ingram submitted a written statement in which she said that she did not see Officer Boyd commit any of the acts alleged by Kavanaugh.  (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, p. 13).  Officer John Ellis, the escorting officer, provided a written witness statement as part of the grievance investigation.  Officer Ellis stated that he never saw Officer Boyd strike Kavanaugh.  Officer Ellis saw Officer Boyd lead Kavanaugh by the wrist to his cell.  Officer Ellis stated that he locked the cell door.  Kavanaugh's handcuffs were subsequently removed.  (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, p. 14).

The defendants also submitted an inter-office communication from Lieutenant Jackson to Warden Castillo, stating that Kavanaugh was a nineteen-year-old black male serving a one-year sentence for two Travis County convictions for credit card abuse and attempted possession of a controlled substance, hydrocodone.  (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, p. 18).  Lieutenant Jackson had interviewed the officers involved in the May 25, 2009 incident and summarized his findings.  Officer Ellis was having a difficult time escorting Kavanaugh from the shower to the cell.  Officer Boyd reported that he saw Kavanaugh arguing with Officer Ellis.  Officer Boyd gave his keys to Officer Ingram and left his post in the picket to assist Officer Ellis.  Officer Boyd took Kavanaugh's left arm and instructed him to step into the cell.  Officer Boyd held the left arm and ordered Kavanaugh to place his arms through the food slot so the handcuffs could be removed.  Once the cuffs were removed, Officer Boyd left the area.

Officer Ellis stated that he was escorting Kavanaugh to his cell from the shower area.  At the cell entrance, Kavanaugh began arguing about a hair brush that had fallen to the floor.  When Officer Boyd arrived on the scene, Kavanaugh began to comply with orders.

Lieutenant Jackson concluded, based on his interviews with the officers, that there was no evidence to support Kavanaugh's allegations and that the officers acted within prison guidelines.  (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, p. 19).

This court analyzes the defendants' motion and the summary judgment evidence under the applicable law.

## III.   Exhaustion of Administrative Remedies

Under 42 U.S.C. § 1997e, a prisoner may not file a suit under § 1983 unless available administrative remedies are exhausted.  42 U.S.C. § 1997e(a) (Supp. 1996).  Exhaustion is a

8

prerequisite to suit even when the prisoner seeks relief not available in grievance proceedings, such as money damages. *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001). When a prisoner fails to exhaust his administrative remedies before filing suit without a valid excuse, the court may dismiss the action without prejudice to its refiling after the prisoner exhausts his administrative remedies. *See Wendell v. Asher*, 162 F.3d 887, 890-92 (5th Cir. 1998);[2] *Gordon v. Pettiford*, 271 Fed. App'x 464, 464 (5th Cir. 2008) (per curiam). When exhaustion is precluded because the deadlines for the administrative remedies have passed, the action is properly dismissed with prejudice. *Johnson v. La. ex rel. La. Dep't of Pub. Safety & Corr.*, 468 F.3d 278, 278-81 (5th Cir. 2006) (per curiam).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Carbe v. Lappin*, 492 F.3d 325, 327 (5th Cir. 2007). The defendants have the burden on summary judgment to establish that Kavanaugh did not exhaust the available administrative remedies.

TDCJ prisoners must pursue their administrative remedies under a two-step grievance procedure. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). An inmate has fifteen days from the date of the incident to file a Step 1 grievance, which is handled within the prison facility. If the prison returns a grievance unprocessed, the inmate has fifteen days to correct the grievance and resubmit it. If unsatisfied with the response, the inmate has fifteen days to file a Step 2 grievance, which is handled at the state level. *Johnson*, 385 F.3d at 515.

On May 27, 2009, Kavanaugh filed a Step 1 grievance, 2009159073, complaining of the use of force on May 25. (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, pp.

---

[2] Although *Wendell* was partially overruled by *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed.2d 798 (2007), *see Richbourg v. Horton*, No. 08-10443, 2008 WL 5068680, at *1 (5th Cir. Dec. 2, 2008) (per curiam), the proposition for which it is cited remains good law.

8-9).  The response to the Step 1 grievance explained that an investigation found no evidence to support the allegations.  On July 10, 2009, Kavanaugh filed a Step 2 grievance.  (*Id.* at 6-7).  The Step 2 grievance response stated that the Officer of the Inspector General had reviewed Kavanaugh's grievance and concluded that there was insufficient evidence to warrant an investigation.

The grievances do not raise any complaints against Sergeant Jones or Warden Castillo.  Nor did Kavanaugh complain of the failure to protect his safety by these defendants or any other prison officials.  Kavanaugh failed to exhaust his failure-to-protect claim against Sergeant Jones and Warden Castillo.  Kavanaugh's failure-to-protect claim against Sergeant Jones and Warden Castillo is dismissed for failure to exhaust administrative remedies as required by the PLRA.

## IV.   The Claims Against the Defendants in Their Individual Capacities

### A.   Qualified Immunity

The defendants assert that as a matter of law, they are entitled to qualified immunity because Kavanaugh failed to allege a constitutional violation and because the undisputed evidence shows that their actions were objectively reasonable in light of clearly established law.  (Docket Entry No. 28, Defendants Motion for Summary Judgment, pp. 8-16).  Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Flores v. City of Palacios,* 381 F.3d 391, 393-94 (5th Cir. 2004).

In reviewing a motion for summary judgment based on qualified immunity, a district court undertakes a two-step analysis.  One step examines whether a statutory or constitutional right would have been violated on the facts alleged.  *Pearson v. Callahan,* ---U.S. ----, 129 S. Ct. 808, 818

(2009); *Saucier v. Katz,* 533 U.S. 194, 200 (2001); *Aucoin v. Haney,* 306 F.3d 268, 272 (5th Cir. 2002).   A second step examines whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores,* 381 F.3d at 395 (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)).   If the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin,* 306 F.3d at 272.   Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.,* 380 F.3d 872, 879 (5th Cir. 2004).

Once a government officer pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the employee's allegedly wrongful conduct violated clearly established law. *Bazan v. Hidalgo Cnty.,* 246 F.3d 481, 489 (5th Cir. 2001). This requires the plaintiff to plead "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir. 1996).   "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).

### B.      The Excessive Force Claim

In *Hudson v. McMillian,* 503 U.S. 1 (1992), the Supreme Court held that inmates raising allegations of excessive force must show that the force used was malicious and sadistic, for the very purpose of causing harm, rather than in a good faith effort to restore discipline. The Court also noted that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from

constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson,* 112 S. Ct. at 999. Kavanaugh was a convicted felon. The *Hudson* standard applies. *Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir.), *cert. denied,* 509 U.S. 905 (1993).

The Fifth Circuit has identified five factors to be considered in determining whether an unnecessary and wanton infliction of pain violated an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder,* 137 F.3d 836, 839 (5th Cir. 1998); *Hudson v. McMillian,* 962 F.2d 522, 523 (5th Cir. 1992). This court considers the *Hudson* factors in light of the record.

The first *Hudson* factor concerns the extent of the injuries suffered. Kavanaugh states that following the use of force, he suffered a knot on his head, pain in his left shoulder, and pain in his hip. An inmate must show more than a *de minimis* injury resulting from the use of excessive force to show a violation of the Eighth Amendment. *Knight v. Caldwell,* 970 F.2d 1430, 1432-33 (5th Cir. 1992); *Jackson v. Culbertson,* 984 F.2d 699, 700 (5th Cir. 1993). Although the injury must be more than *de minimis,* it need not be significant. *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997) (citing *Hudson*).

In *Siglar,* the Fifth Circuit described the conduct and injury as follows: "[the corrections officer] twisted Siglar's arm behind his back and twisted Siglar's ear. Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting

from the incident.  There is no allegation that he sustained long term damage to his ear." *Id.* at 193. The court analyzed "whether Siglar's bruised ear amounts to a 'physical injury' that can serve as the basis for his excessive force" claim.  The court concluded that because "Siglar's alleged injury – a sore, bruised ear lasting for three days – was *de minimis,*" he had not raised a valid claim for excessive force. *Id.*

In *Brown v. Lippard,* 472 F.3d 384 (5th Cir. 2006), the Fifth Circuit stated that in evaluating use of force claims, the courts may look to the seriousness of the injury to determine whether the use of force could plausibly have been thought necessary, or instead showed such unjustified infliction of harm to show a knowing willingness that it occur.  *Brown,* 472 F.3d at 387, *citing Whitley v. Albers,* 475 U.S. 312, 321 (1986).  The Fifth Circuit went on to state that injuries are insufficient to support an excessive force claim if there is *no* physical injury or the injury is extremely minor, such as a bruise caused by having one's ear twisted.  The attack and injuries the plaintiff in *Brown* described, which included one-centimeter abrasions on his left knee and left shoulder, pain in his right knee, and tenderness around his left thumb, "cannot be likened to a twisted ear."

In *Gomez v. Chandler,* 163 F.3d 921, 924-25 (5th Cir. 1999), the Fifth Circuit contrasted the use of force and resulting injury with the facts in *Siglar.*  The court noted that Gomez received medical treatment for his injury.  The *Gomez* court observed that the force used against Siglar was far briefer and less intense and less calculated to produce real physical harm than that applied to Gomez.  Guards allegedly knocked Gomez down so his head struck the concrete floor, scraped his face against the floor, repeatedly punched him in the face for about five minutes, kicked him in the face and head, then continued to punch Gomez using fists.  Gomez allegedly suffered "cuts, scrapes,

contusions to the face, head, and body." The Fifth Circuit concluded that it could not say as a matter of law that Gomez's injuries were *de minimis.*

In this case, Kavanaugh's injuries consisted of a knot on his head and pain in his shoulder and hip. The medical records show that Kavanaugh never complained of an injury to his head. He made numerous complaints of joint pain associated with sickle cell anemia. Before the alleged use of force, Kavanaugh had complained of the pain in his left shoulder and left hip. The medical records show that Kavanaugh himself attributed the pain in his shoulder and hip to sickle cell anemia, not to the use of force by Officer Boyd. The knot on Kavanaugh's head is like the injuries suffered in the *Siglar* case, a twisted ear requiring no medical treatment. *Siglar v. Hightower,* 112 F.3d at 193. The alleged force used against Kavanaugh was far briefer and less intense and less calculated to produce real physical harm than that applied to Gomez.

In *Wilkins v. Gaddy,* --- U.S. ---, 130 S. Ct. 1175 (2010), the Supreme Court stated that the core judicial inquiry when a prisoner alleges excessive force is not whether a certain degree of injury was sustained, but rather whether force was applied in a good-faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm. This conclusion essentially comports with the Fifth Circuit's decision in *Brown.* The Supreme Court acknowledged that the extent of injury could provide some indication of the amount of force applied, and noted that "not every malevolent touch by a prison guard gives rise to a federal cause of action." The prisoner in *Wilkins* suffered multiple physical injuries requiring medical attention, including a bruised heel, lower back pain, increased blood pressure, migraine headaches, dizziness, psychological trauma, and mental anguish including depression, panic attacks, and nightmares. He received X-rays and was

prescribed medications. In discussing the approaches taken by different circuits, the Supreme Court observed that these injuries would not be considered *de minimis* in the Fifth Circuit.

As in *Wilkins,* the Fifth Circuit's decision in *Brown* did not focus on the level of injury sustained but rather on the justification for the use of force. In keeping with established Supreme Court precedent, the Fifth Circuit stated that if no injury was suffered, or the injury suffered was virtually nonexistent, no constitutional claim would be stated. *Brown,* 482 F.3d at 387. In this case, the slight injury and the absence of any complaint by Kavanaugh to the medical care provided is evidence that the force used was neither wanton nor malicious. The first *Hudson* factor weighs against Kavanaugh.

The second *Hudson* factor concerns the need for the application of force. This court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant. Because Kavanaugh has not filed a response to the defendants' motion for summary judgment, the court liberally construes Kavanaugh's pleadings as his response. In these pleadings, Kavanaugh stated that his physical limitations and handcuffs prevented him from quickly obeying the order to get back on his feet. He acknowledges that he did fail to comply with the orders. Kavanaugh has offered only a scintilla of evidence in support of his position that he was subjected to an excessive use of force. The second *Hudson* factor weighs in favor of the defendants.

The third *Hudson* factor involves the relationship between the need and the amount of force used. The summary judgment evidence shows that Officer Boyd saw Kavanaugh arguing with Officer Ellis and came to assist. The defendants perceived a threat because Kavanaugh had been arguing with Officer Ellis and had refused several orders to stand up and go into his cell. Officer Boyd responded to the threat by physically placing Kavanaugh into his cell. The absence of any

complaint of injury after the incident further shows that the application of force was not clearly excessive to the need to enforce the order. *Hudson,* 503 U.S. at 6-7. The third *Hudson* factor weighs in favor of the defendants.

The fourth *Hudson* factor concerns the threat reasonably perceived by the responsible officials. Kavanaugh had refused two direct orders to stand up and enter his cell. By his own admission, Kavanaugh kept trying to pick up his hair brush while his hands were cuffed behind his back. Kavanaugh's behavior required intervention by Officer Boyd, who was the picket officer and responsible for monitoring the wing from his post. When he observed Kavanaugh's disobedience, he turned over his keys and picket duties to Officer Ingram and went to help Officer Ellis. Instead, Officer Boyd left the cell, locked the cell door, and removed Kavanaugh's handcuffs through the food slot. By his own admission, Kavanaugh threatened to set his cell on fire because Officer Boyd had refused to call a ranking officer. He further admits flooding the hallway to force an officer to come to his cell.[3] The summary judgment evidence shows that after Kavanaugh refused orders to get up and go into his cell, guards secured him in his cell. The fourth *Hudson* factor weighs in favor of defendants.

The fifth *Hudson* factor concerns the efforts made to temper the severity of a forceful response. The summary judgment evidence shows that officers repeatedly instructed Kavanaugh to stand up and go into his cell. Officer Boyd repeatedly said that he would pick up the hair brush and that Kavanaugh did not have to get it himself. Kavanaugh disregarded the orders, told Officer

---

[3] The summary judgment evidence shows that Kavanaugh had a number of confrontations with officers on the Estelle Unit. (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. B, p. 23). On May 23, 2009, Kavanaugh had become angry at an officer, tried to hit him with a shower shoe, then removed a light fixture and threw it out of his cell. (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. A, p. 2).

Boyd that he almost had the hair brush, and continued unsuccessfully to try to retrieve the hair brush while his hands were cuffed behind his back. Only then did Officer Boyd take steps to assist Officer Ellis in placing Kavanaugh in his cell. The fifth *Hudson* factor weighs in favor of the defendants.

This court finds that the defendants applied force in a good-faith effort to maintain discipline and that they did not use force maliciously and sadistically for the very purpose of causing harm to Kavanaugh. All the *Hudson* factors weigh against Kavanaugh.

Kavanaugh has failed to show that he was subjected to cruel and unusual punishment as a result of being thrown onto his bed. The defendants' motion for summary judgment on Kavanaugh's claim of excessive force is granted.

## C.    The Denial of Medical Care Claim

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference to the serious medical needs of prisoners may violate the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards and whether it is intentionally denying or delaying access to medical care. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Estelle v. Gamble,* 429 U.S. 97 (1976). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference requires a showing of unnecessary and wanton infliction of pain, rising "to the level of egregious intentional conduct." *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1999); *Gobert v. Caldwell,* 463 F.3d 339, 351 (5th Cir. 2006).

A prison official may not be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan,* 511 U.S.

825, 839-40 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*. at 837. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of that risk. *Id; Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994).

A claim that prison medical personnel made an incorrect diagnosis does not state a cause of action for deliberate indifference in providing medical care. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). A decision not to provide additional or different treatment "is a classic example of a matter for medical judgment" rather than a basis for an Eighth Amendment claim. *Estelle*, 429 U.S. at 107. "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana*, 122 F.3d 286, 292 (5th Cir. 1997). A plaintiff must allege and raise a fact issue as to whether prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238.

Deliberate indifference is especially difficult to show when the inmate has been provided with ongoing medical treatment. "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Gobert*, 463 F.3d at 346 (citations omitted). Records showing that an inmate was given medical examinations, treatments, and medications may rebut an inmate's allegations of deliberate indifference in denying or delaying medical care. *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).

The court has carefully reviewed the medical records and provided a summary of the treatment he received. Kavanaugh claims that he did not receive proper care for the knot on his head as well as the pain in his shoulder and hip. The summary judgment evidence shows that Kavanaugh did not complain of an injury to his head. On May 18, 2009, before the use of force incident, Kavanaugh had complained of joint pain in his shoulder and hip from his chronic sickle cell anemia. Because Kavanaugh complained that Tylenol was not treating his pain effectively, medical personnel prescribed Meloxicam. (Docket Entry No. 28, Defendants' Motion for Summary Judgment, Ex. B, p. 4). Medical personnel responded to Kavanaugh's request.

Kavanaugh apparently claims that medical personnel should have treated his complaints of joint pain associated with sickle cell anemia more aggressively and promptly. Such a complaint, without more, is insufficient to show deliberate indifference because "the decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Domino*, 239 F.3d at 756 (internal quotation omitted). Nor does "an official's failure to alleviate a significant risk that he should have perceived but did not;" such a failure, "while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 262-63 (5th Cir. 2002) (holding that "[d]eliberate indifference cannot be inferred from a prison official's mere failure to act reasonably, *i.e.*, it cannot be inferred from negligence alone").

Kavanaugh has failed to rebut the defendants' affirmative defense of qualified immunity by showing the existence of a disputed fact issue material to determining whether the defendants were deliberately indifferent to his serious medical needs. *See Pierce v. Smith,* 117 F.3d 866, 871-72 (5th

Cir. 1997).  The defendants are entitled to judgment as a matter of law as to Kavanaugh's claim of deliberate indifference to his serious medical needs.

## V.    The Claims Against the Defendants in Their Official Capacities

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court.  *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  This bar remains in effect when state officials are sued for damages in their official capacity.  *Cory v. White*, 457 U.S. 85, 90 (1982).  Kavanaugh sues the defendants for damages in their official capacities.  Those claims are barred by the Eleventh Amendment.

## VI.    Conclusion

The defendants' motion for summary judgment, (Docket Entry No. 28), is granted.  Any remaining pending motions are denied as moot.

Final judgment is entered by separate order.

SIGNED on February 8, 2011, at Houston, Texas.

 

_____
Lee H. Rosenthal
United States District Judge